IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

SALVATORE BROES, III,          :
                               :
    Plaintiff,             :
v.                             :     Case No. 2:19-cv-00111-RWS
                               :
AARON BOYCE ET AL              :
                               :
    Defendants             :

## PLAINTIFF'S INITIAL DISCLOSURES

Plaintiff submits his disclosures per L.R. 26.1 and Fed. R. Civ. P. 26 and incorporates his Second Amended Complaint [SAC Doc 51] and initial discovery responses dated 2/9/21 by reference.

**(1)  State precisely the classification of the cause of action being filed, a brief factual outline of the case, plaintiff's contentions as to what defendant did or failed to do and a succinct statement of the legal issues in the case.**

On or about 3/6/17, Plaintiff Sal Broes was helping his former spouse, Defendant Teems remove her belongings from their former marital home, in Dawson County, in which Broes would continue residing.  Teems handed her mobile phone to Broes so he could text himself a list of the belongings she could keep when she went outside to load her belongings in her vehicle.  Teeems' phone displayed a video of her engaged in intimate, sexual acts with various individuals. Teems saw Broes looking at the video on her phone, kicked in and damaged the door to the house and

assaulted him: she called 911, falsely stating Broes assaulted her, took and damaged her phone. Three Dawson County Deputy Sheriffs, Deputy Lowry, Deputy Jay Crawford and a third deputy appeared on the scene and questioned Broes and Teems about the incident. Lowry, Crawford and the third deputy decided not to charge Broes with a crime, as Teems consensually handed him her phone with its visible images. There was no evidence Broes had assaulted Teems or committed any crime.

However, Teems attacked and injured Broes and damaged his property by kicking down his door, subjecting her to criminal prosecution for these offenses. Lowry, Crawford and the third deputy considered charging Teems with crimes, such as assaulting Broes and damaging his property. Lowry, Crawford and the third deputy had Broes and Teems agree not to press charges against each other, given these circumstances, who then departed without arresting anyone.

Teems was interviewed by Patrick Apoian, a Dawson deputy sheriff /investigator, who recorded and/or videotaped the interview and took notes, a Dawson investigator since 1/17 after 14 years of criminal investigative experience with Atlanta Police Department, the most experienced investigator working with Dawson as of the date of the incident with Broes and Teems. Teems claimed to Apoian that her neck was red from the alleged assault by Broes. Apoian instead determined the redness was from a tanning bed and Broes did not steal her phone.

Apoian determined instead that Teems consensually provided the phone to him and otherwise determined Teems was not a credible witness, whose story was not a sufficient basis to charge Broes with a crime, as he documented in his case notes. On or about 3/14/17, Apoian spoke with Broes by telephone on the 3/6/17 incident, interviewed Broes and confirmed his version of the events, namely that Teems had handed him her phone and then damaged his property and assaulted him.

Apoian spoke with Lowry and/or Crawford and/or the other deputy from the 3/6/17 incident, who again indicated Broes committed no crime against Teems, who could be charged with crimes against him, damaging his property and assaulting him. They decided not to charge anyone and had the parties agree not to charge each other. Apoian concluded from his investigation Broes had not committed a crime and there was no probable cause to obtain warrants and arrest Broes for any alleged crimes.

Apoian, Crawford, Lowry and the other deputy established from their investigation there were no facts and circumstances within the knowledge of the Dawson Sheriff's Department sufficient to warrant a reasonable belief that Broes had committed a crime against Teems. Apoian told Broes that Apoian would not execute any arrest warrants as to him as Apoian found no evidence of probable cause to charge Broes with a crime per the incident on 3/6/7 and declined to file criminal charges against Broes. Apoian was supported in his decision not to charge Broes by

Crawford, Lowery and the other deputy who also found Teems lacked credibility.

Before and during March 2017, Apoian was instructed by Captain Thurmand Atkinson and Defendant Wright to prosecute as many domestic criminal charges as possible to generate federal grant monies for their domestic violence program, a custom, policy or practice of Dawson County and/or Johnson. Teems is a close personal friend of Wright and/or Rucker-Wright, who did not disclose that personal relationship and conflict of interest to Apoian. Teems sought out and/or spoke with Wright and/or Rucker-Wright, seeking their assistance in charging Broes with alleged crimes in the 3/6/17 incident, after Apoian, Crawford, Lowry and the other deputy declined to do so, for lack of probable cause. Teems desired to maliciously and falsely charge Broes with crimes due her lingering animus from her divorce, to degrade and humiliate him to their children and destroy his career.

Wright and/or Rucker-Wright conspired with Teems in maliciously and falsely charging Broes with baseless, unsupported crimes from the 3/6/17 incident. Wright and/or Rucker-Wright ignored the investigation and findings by Aponia, Lowry, Crawford and the other office that no probate cause existed to charge Broes with any such crimes in order to asset Teems, their friend. Wright was an unqualified officer, lacking supervisory training, with a propensity to maliciously prosecute suspects with false crimes, like Broes, mistrusted by many fellow officers who retained her position

due mainly to personal influence with the Georgia Bureau of Investigation. [GBI] Wright was interested in generating a higher volume of arrests to benefit her professional advancement and possibly generate federal drug program assistance for Dawson, who cultivated and arrested or chose not to arrest drug informants depending the volume of arrests generated for her by their information.

Wright's misconduct was authorized and ratified by Dawson and/or Johnson to generate monies for Dawson's drug treatment programs, such as under the Edward Byrne Memorial Justice Assistance Grant (JAG) Program, 42 U.S.C. §3751(a). On 2/29/16, Wright and Investigator Travis Greene were reprimanded by Dawson Judge Jason Deal for illegally arresting Wendi Lee Howard in Deal's court for alleged perjury after Howard overhead an elderly man instructing a juror to find a criminal defendant guilty. Deal ordered Howard's immediate release and he admonished Wright and Green for their misconduct. Wright never defended or disputed her above misconduct but was not disciplined by Defendants Dawson and/or Johnson, which she repeated with Broes.

Arresting and/or prosecuting individuals without evidence is a custom, practice and/or policy of the Defendants, motivated by financial gain, particularly Defendant Wright, with much influence, power and control over Dawson's law enforcement from 2017-18 to whom law enforcement personnel deferred, a situation

unchecked by Dawson. Her spouse is Defendant Rucker-Wright, 911 Director of Dawson, with access to its criminal case records and handles expungements, such as the records on the 3/6/17 incident, including those of Apoian, Crawford, Lowry and the other officer, who determined no probable cause existed to charge Broes.

Boyce, Wright and/or Rucker-Wright altered the above records in order to fabricate false evidence to charge Broes with crimes from the 3/6/17 incident, as Wright has fabricated similar such arrest charges previously. Apoian's superiors, including Wright, wanted baseless charges filed against Broes so Dawson receives federal grants for its domestic violence program, its pattern or practice. Rucker-Wright could access and/or alter Apoian's computer notes as to Broes' criminal case or any other case, who also handles criminal expungements. Apoian declined to charge Broes with 3 other officers per the lack of probable cause and closed the case.

Upon information, Boyce, Rucker-Wright and/or Wright altered Apoian's notes as to his investigation into the 3/6/17 incident, making them appear that probable cause existed to arrest Broes and/or the case was still open, another official practice and/or policy of Dawson. Apoian did not find his case-closing notes in documents provided by Dawson to Broes under the Open Records Act, which were omitted and/or destroyed in violation of the Act. Apoian was subjected to workplace harassment by Wright and/or others whose was resentful of Apoian's close working

relationship with the Sheriff and who sought to silence Apoian just as she sought to silence Howard in the 2016 courtroom incident. Apoian complained of hostile work environment and was transferred by the sheriff's office from the investigative division to a demotion in the patrol division.

Johnson, Wright and/or Rucker-Wright had Boyce, an inexperienced prison officer assigned to Apoian's position. Johnson, Wright and Rucker-Wright immediately assigned the closed case against Broes to Boyce as his first case to ensure it would be reopened to maliciously prosecute Broes. Johnson, Boyce, Wright and Rucker-Wright knew or should have known Apoian, Crawford, Lowry and the other deputy determined there was no probable cause to charge Broes with crimes resulting from the 3/6/17 incident. On 4/8/17, Dawson made Boyce an investigator who lacked POST domestic violence training Boyce lacked training and/or experience in investigative work in March 2017, who only took a few online courses, useless for training and/or experience, essentially a scam.

Boyce was unqualified as a POST-certified deputy to investigate and/or crimes such as those alleged against Broes in March 2017, contrary to Dawson's Facebook page as of 11/5/18 advertising such qualifications. Boyce was selected by Wright and Rucker-Wright to knowingly rubber-stamp the false charges against Broes which lacked any legal or factual basis as he was aware. Wright, Rucker-Wright and

Boyce, maliciously proceeded with issuance of false warrants as to Broes, who deliberately ignored, concealed, falsified and altered the findings/report of Apoian, Crawford, Lowry and the other officer on the absence of probable cause against Broes. Boyce was not present at the 3/6/17 incident between Broes and Teems and he never questioned Broes about the incident and never investigated the incident.

Boyce deliberately and/or recklessly never spoke with Apoian, Crawford, Lowry or the third deputy as to the incident, who had knowledge that these senior officers already investigated the incident and determined there was no probable cause to charge Broes with a crime. Boyce was aware of the lack of probable cause for the alleged crimes against Broes, per the original investigation by Apoian, Crawford, Lowry and the other officer, as were the other Police Defendants, particularly Wright. Boyce, Wright and Rucker-Wright deliberately ignored the prior investigation to maliciously charge Broes with the false crimes, just to benefit Boyce at the police department and for Wright and Rucker-Wright to advance Teems's vendetta against Broes. Boyce, Wright and Rucker-Wright deliberately, wrongfully and/or illegally falsified the incident report and probable cause affidavits and/or other evidence to concoct false evidence for the alleged crimes and warrants against Broes to justify their arrest, bring and prosecute unsupported criminal charges. Broes was illegally arrested by Boyce and/or at the instance of Wright and Rucker-Wright based upon

false statements precluding probable cause, who intentionally provided false, perjured testimony and patently false allegations, resulting in the below charges:

(a)     2017MW374F: Domestic Violence/Assault; see false affidavit by Boyce dated 5/8/17 containing perjured statement that Broes placed his arm around Teems' neck to allegedly choke or strangle her: contrary to the prior investigation of Apoian and the other deputies.

(b)     2017MW444M: Theft By Taking; see false affidavit by Boyce dated 5/30/17 that Broes 'took' Teems phone from her to send himself a screen shot: contrary to the prior investigation of Apoian and the other deputies.

(c)     2017MW445M: Prohibition on Nude or Sexually Explicit Electronic Transmissions; see false affidavit by Boyce dated 5/30/17, again contrary to the prior investigation and dismissed.

(d)     2017MW446F: Computer Trespass; see affidavit by Boyce dated 5/30/17 providing perjured statement that Broes "took" Teems' phone to send himself a screen shot from her phone" when Teems consensually handed him the phone, with personal information visible.

(e)     2017-SW-0022: Aggravated Assault: see false affidavit by Boyce dated 5/8/17 containing perjured statement that Broes placed his arm around Teems' neck to allegedly choke or strangle her: contrary to the prior investigation

of Apoian and the other deputies.

Under Wright's direction, Boyce issued a false incident report and/or falsely sworn probable cause affidavit for the arrest of Broes, which lacked any basis for the alleged crimes, as these Defendants were aware, per the prior investigation by Apoian, Crawford, Lowry and the other office, but participated in this misconduct by intentionally proceeding with false arrests, warrants and prosecution of Broes without any legal basis.  On 5/8/17, Broes was arrested by Boyce, accompanied by Officers Hamrick and Murphy, as Boyce acted recklessly and/or intentionally in arresting Broes absent probable cause. The consequences of the recklessly or knowingly false testimony of Boyce on the arrest affidavits was reflected on 7/26/17, the first probable cause hearing in Dawson Superior Court, as Boyce falsely testified Lowry was the sole prior responding officer of the 3/6/17 event, who is not immune for his misconduct.  Boyce's warrants were perjured or recklessly false, per his 7/26/17 testimony, as he knew Lowry, Crawford and the third deputy also investigated the 3/6/17 incident, found no probable to charge Broes with a crime and had Teems agree not to bring charges against Broes for the alleged crimes, about which Boyce deliberately lied.    Boyce's warrants were perjured or recklessly false, as reflected by his 7/26/17 testimony, as he testified Lowry was the sole prior law officer to speak with Broes, who admitted the

physical altercation to Lowry, could not explain his possession of the phone and claimed Lowry indicated the red marks on Teems' neck supported her version of the events. Boyce's warrants were perjured or recklessly false, as reflected by his 7/26/17 testimony, who knew Apoian also investigated the 3/6/17 incident and determined Teems gave her phone to Broes and her neck was red from the tanning bed and there was no probable cause to charge Broes with a crime resulting from that incident, of which Boyce deliberately lied to the Superior Court.

Boyce never spoke to Lowry as to his investigation, including the lack of probable cause to charge Broes with any crimes. Boyce never viewed and/or ignored the videotape Apoian took of Teems while investigating the 3/6/17 incident and never spoke with Apoian, or reviewed his notes on his investigation and the lack of probable cause to charge Broes with any crimes of which Boyce was fully aware, but desired to charge Broes just to please Johnson, Wright and Rucker-Wright. Boyce's warrants were perjured or recklessly false, as reflected by his 9/26/17, testimony at the next probable cause hearing, repeating his lies that Broes took Teems' phone and assaulted her per her red neck and indicating that he attempted to interview Broes regarding the 3/6/17 incident over 2 months later. Boyce's warrants were perjured or recklessly false, as he knew Apoian also investigated the 3/6/17 incident and determined Teems gave her phone to Broes

and her neck was red <u>from the tanning bed</u>: that there was no probable cause to charge Broes with a crime resulting from that incident, of which Boyce lied to the Superior Court, which he did not disclose and concealed from the court.

Boyce's perjured or recklessly false statements were fabricated at the bequest of and/or with the ulterior motive to ingratiate himself with Wright and Rucker-Wright so he could advance his career in Dawson County, at the expense of Broes. Boyce, Wright, Rucker-Wright and/or other police deliberately, wrongfully and/or illegally falsified or altered the incident report and/or probable cause affidavits and/or other evidence, including Apoian's notes, to concoct false evidence for the alleged crimes and warrants against Broes, to justify his false arrest and to bring and/or prosecute unsupported criminal charges against him. Broes was illegally arrested by Boyce, Wright, Rucker-Wright and/or other police based upon false statements precluding a finding of probable cause, procured by Defendants, who intentionally provided false, perjured testimony and otherwise procured the warrants against Broes based on patently false allegations resulting in the above criminal charges. Boyce testified falsely under oath in seeking the warrants and did and/or should have known the information in the affidavits was false as did the other Defendants. Boyce lacked probable cause to obtain warrants and arrest Broes for his alleged crimes as Apoian, Crawford, Lowry and the other

deputy previously established there were no facts and circumstances sufficient to warrant a reasonable belief that Broes had committed or was committing a crime per the events of 3/6/17. Boyce, Wright and Rucker-Wright knew Broes's arrest warrants lacked probable cause, were based upon the perjury of Teems and the malicious intent to wrongfully prosecute Broes to benefit Teems, a friend of Wright and Rucker- Wright.

Apoian learned of Broes's arrest after being transferred to patrol, anticipating he would be called as a witness to exonerate Broes but Defendants never called Apoian in the case against Broes. Apoian repeatedly expressed his concerns to Defendants that his notes in Broes' case and other cases were altered, such as by Defendant Rucker-Wright. In August 2017, Apoian resigned with Dawson after his concerns were ignored by Dawson and the law enforcement personnel there. Dawson County subpoenaed Apoian from August 2017 to May 2019 to testify in criminal cases he formerly worked, despite his repeated warnings that his case records were altered after his demotion and/or resignation. Broes was arrested based upon arrest affidavits which included recklessly or deliberately false statements precluding a finding of probable cause.

Broes was illegally incarcerated in the prison of Dawson by the Defendants due solely to the false statements and their other illegal misconduct. On 5/8/17, his charges were bound over to Dawson Superior Case No: 2018-CR-0057. [State Case] and he retained counsel to defend the Case but was incarcerated. On 9/27/17, the Dawson Court dismissed the charges in the Case as to Electronic Transmissions, for which Defendants admitted there was no probable cause.

On 12/18/17, Teems voluntarily executed a notarized letter admitting her criminal allegations against Broes were baseless, of which the other Defendants had knowledge prior to charging Broes with the crimes, stating that "I would like all charge against Broes be dismissed" and "at no time did I think that he would keep my phone. I have my phone and it is fine.. Sal Broes did not choke me and I want this case to be dismissed" On 1/26/18, Dawson dismissed the State Case as the police misconduct was exposed. Defendants deliberately, wrongfully and/or illegally conspired to unlawfully detain, arrest and prosecute Broes, with knowledge of the lack of reasonable suspicion for the stop or probable cause for the arrests, per the video, which they jointly effectuated to conceal their misconduct and committed as agents of each other. Defendants know of, consented to and ratified and are liable for each other's misconduct as agents and/or conspirators. The Dawson Defendants refused to expunge the false charges against

Broes, per the influence of Teems with Wright and Rucker-Wright. Broes is entitled to all relief in remaining claims of the Amended Complaint for which there is a factual and legal basis, per the Order.

**(2) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.**

RESPONSE:

Without limitation, Plaintiff relies on 28 U.S.C. § 2201 *et seq*, 42 U.S.C. §1983 *et seq*, O.C.G.A. § 51-1-1 *et seq*, O.C.G.A. § 13-6-11, O.C.G.A. § 16-13-30, ***Black v. Wigington***, 811 F.3d 1259, 1266 (11th Cir. 2016), ***Pierce v. Clayton Cty***., 717 Fed. Appx. 866 (11th Cir. 2017), ***Lawrence v. City of Fairhope***, 429 Fed. Appx. 900 (11th Cir. 2011), ***Lewis v. St. Petersburg***, 561 F.3d, 1260, 1267 1293 (11th Cir. 2001), ***United States v. McLeod***, 385 F.2d 734, 745-46 (5th Cir. 1967) Plaintiff refers to the SAC, which sets forth the legal theories he contends presently apply to this action, as well as applicable principles of common law and equity. He reserves the right to supplement this response as more information becomes available during discovery.

**(3) Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information. (Attach witness list to Responses to Mandatory Disclosures as Attachment A.)**

RESPONSE:

　　　See Attachment A.

**(4)　Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Mandatory Disclosures as Attachment B.)**

RESPONSE:

　　　See Attachment B.

No expert has been retained and no report has been prepared to date.  Plaintiffs

reserve the right to supplement this response as more information becomes

available to them and if experts become necessary, as discovery just commenced.

**(5)　Provide a copy of, or a description by category and location of, all documents, data compilations, and tangible things in your possession, custody or control that are relevant to disputed facts alleged with particularity in the pleadings, (Attach documents list and descriptions to Responses to Mandatory Disclosures at Attachment C.)**

RESPONSE:

　　　See Attachment C.  Plaintiff reserves the right to supplement this response as

more information becomes available, as discovery has just commenced.

**(6)　In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by category and locations of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as**

**under Fed. R. Civ. P. 34. (Attach any copies and descriptions to Responses to Mandatory Disclosures at Attachment D.)**
RESPONSE:

See Attachment D. Plaintiff reserves the right to amend his claims should additional facts become known during discovery.

**(7) Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Responses to Mandatory Disclosures as Attachment E.)**

RESPONSE:

See Attachment E. Not presently applicable – aside from insurance coverage disclosed by the Defendants.

**(8) Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiff's cause of action and state the basis and extent of such interest.**

RESPONSE:

**Inapplicable.** Plaintiff is unaware at the present time of any persons or legal entities having a subrogation interest in the cause of action set forth in the Second Complaint. He reserves the right to supplement its response as more information becomes available to him.

## <u>CERTIFICATE OF COMPLIANCE</u>

Per L.R. 5.1(C), I certify this pleading was prepared per L.R. 5.1(B) in Times New Roman 14-point typeface.

## <u>CERTIFICATE OF SERVICE</u>

I certify a precise copy of this document was filed ECF on the below date, sending ECF notice to opposing counsel of record.

Respectfully submitted this 5th day of March 2021.

By:  */s/Paul G. Wersant*
Paul G. Wersant
Georgia Bar No. 748341
3245 Peachtree Parkway, Suite D-245
Suwanee, Georgia 30024
Telephone: (678) 894-5876
Email: pwersant@gmail.com
Attorney for Plaintiff

## Attachment A

Upon information and belief, the below persons and entities have knowledge of the matters addressed in the SAC. Plaintiff reserves the right to supplement and/or amend this list as necessary.

1) Plaintiff.

2) Defendants.

3) Persons and entities set forth in Plaintiff's Responses to the initial discovery of the Dawson Defendants served 2/9/21, such as those identified in Plaintiff's Response to Dawson Interrogatory No. 2. Plaintiff will amend this response when an appropriate stipulation has been provided regarding disclosure certain confidential information in those responses.

4) Persons and entities identified in the original and Amended Disclosures of the Dawson Defendants and their responses to Plaintiff's discovery.

5) Persons and entities yet to be identified during discovery, to which Plaintiff reserves the right to supplement and amend this response.

**<u>Attachment B</u>**

Plaintiff has not yet identified any expert witnesses under FRE 702, 703 or 705. He reserves the right to supplement and amend this response.

**<u>Attachment C</u>**

1) Documents and things set forth in Plaintiff's Responses to the Initial Discovery of the Dawson Defendants, served 2/9/21, such as those identified in his Responses to Dawson Interrogatories No. 2, 6, 10, 13, 17, 19 and to Dawson Requests for Production No 12, 13, 14, 17.

2) All Documents identified by Defendants in their Initial and Amended Disclosures and responses to Plaintiff's Discovery.

3) Documents in the record of the State Court Case, although Plaintiff is not presently in possession of all of them.

4) Other documents yet to be identified during discovery, to which Plaintiff reserves the right to supplement and amend this response. The above are identified per Fed. R. Civ. P. 26(a)(1)(B) without waiving and specifically preserving any privilege and applicable objections to the documents.

## **Attachment D**

In <u>Count II</u> of the SAC, under 42 U.S.C. §1983 *et seq*, O.C.G.A. § 51-1-1 *et seq* and applicable law, Plaintiff seeks damages for these civil rights violations against Defendants for their malicious prosecution, compensatory, consequential, special, nominal, punitive/exemplary damages, fees, interest, costs and just relief, due to his severe emotional distress, pain, suffering, mental anguish, humiliation, loss of enjoyment, illegal confinement, loss of civil rights, embarrassment, damage to reputation, loss of income, loss of personal property and loss of monies to retain defense counsel. Plaintiff seeks expungement of his illegal arrest, incarceration and prosecution, expunging and invalidating these matters from his criminal record, relating back to their initiation, which Defendants may not disseminate, with all just relief, originally pled in <u>Count V,</u> In <u>Count VII</u> of the SAC, per O.C.G.A. § 13-6-11 *et seq*, 42 U.S.C. §1983 and 1988 *et seq* and applicable law, Plaintiff demands judgment against Defendants for his attorney's fees, costs and just relief.

This relief is supported by documents and things identified in Plaintiff's Responses to the initial discovery of the Dawson Defendants, served 2/9/21, such as those identified in his Responses to Dawson Interrogatories No. 2, 6, 10, 13, 17, 19 and to Dawson Requests for Production No 12, 13, 14, 17. He may amend or supplement his claims, depending upon information gained during discovery.

## **Attachment E**

Inapplicable to Plaintiff aside from disclosures of Defendants in this regard.